## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GINGER BURROUS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-194-RAW-KEW |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Ginger Burrous (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as an office manager, nurse's aide, leasing clerk, and tax preparer. Claimant alleges an inability to work beginning April 30, 2011 due to limitations resulting from anxiety disorder, obesity, sleep apnea, migraine headaches, arthritis, coronary artery disease, hypertension, mitral valve prolapse, and degenerative joint disease.

**Procedural History**

On August 12, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On December 15, 2015, Administrative Law Judge ("ALJ") Sylke Merchan conducted an administrative hearing by video with Claimant appearing in Ardmore, Oklahoma and the ALJ presiding from Oklahoma City, Oklahoma. On March 18, 2016, the ALJ issued an unfavorable decision. On March 21, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC; (2) failing to perform a proper analysis of the opinion evidence; and (3) failing to properly consider Claimant's obesity.

**Consideration of Impairments in RFC**

In her decision, the ALJ determined Claimant suffered from the severe impairments of obesity, migraines, obstructive sleep apnea, coronary artery disease, hypertension, mitral valve prolapse, and degenerative joint disease. (Tr. 41). The ALJ concluded that Claimant retained the RFC to perform light work except that she could not climb ladders, ropes, or scaffolds and could do no more than occasionally climb ramps or stairs, stoop, balance, crouch, crawl, or kneel. Claimant could perform simple, routine, and repetitive tasks with no strict production requirements. (Tr. 44).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of merchandise marker, self service store attendant, and cafeteria attendant, all of which were found to exist in sufficient numbers both regionally and nationally. (Tr. 50). As a result, the ALJ found Claimant was not under a disability from April 30, 2011, the alleged onset date, through June 30, 2013, the date last insured. Id.

Claimant contends the ALJ failed to include several impairments in the restrictions contained in the RFC. Claimant first indicates the ALJ should have included the limitations caused by her migraine headaches in the RFC. The ALJ determined that the overall evidence did not support disabling coronary artery disease, hypertension,

mitral valve prolapse, obstructive sleep apnea, and migraine headaches. To the extent Claimant was limited by the conditions, the ALJ stated that functional deficits arising from the conditions were addressed in limiting Claimant to light work with only occasional postural activities. She further limited the RFC to simple work in a low stress work setting to accommodate any limitations from headaches, pains, and fatigue/anxiety. (Tr. 46).

Claimant states that the ALJ's addressing of her migraine headaches was erroneous because the headaches were caused by weather changes and strong perfume rather than stress. The basis for this conclusion was subjective speculation by Claimant in a report to Dr. Amer Suleman on June 18, 2013. Dr. Suleman's notes from that date reflect,

> [Claimant] states that the migraines are under control. She did wake up with a headache this morning. She feels that the headache is caused from weather changes and that she did see a chiropractor and was adjusted. She states that strong perfume will make her have a headache. The headache is on the LT side. Will have light and sound sensitivity plus nausea. The headaches will last about 6-8 hours.

(Tr. 279).

However, in a January 15, 2014 visit to Dr. Suleman, Claimant stated, "[s]he stopped the folic acid supplements. Since doing so, her headaches are 95% gone." (Tr. 322). This points up the problem with subjective diagnoses by Claimant - she first believed that her

headaches were caused by weather changes and strong smells. The headaches were 95% resolved after stopping her folic acid supplements, which would appear to be the true cause of her condition. Claimant's migraine headaches continued to remain under control with no mention of intractable migraines and comments that she "has headaches very seldom." (Tr. 274, 277, 280, 283, 286).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

The medical record contains very little in the way of diagnoses of and attributing causes for Claimant's migraine headaches. Claimant's testimony and speculation for cause is vitiated by the fact that the condition has been 95% resolved since January of 2014. The ALJ did not err in relying on this representation by Claimant to her treating physician. No contextual adjustment need be made to accept this statement as largely resolving the condition. Additionally, Claimant's speculation in the briefing concerning the use of computers being required in the representative jobs has no foundation in fact.

Claimant next challenges the ALJ's failure to include limitations for her tachycardia and mitral valve prolapse "events". Claimant contends that the condition remains uncontrolled because she has had adverse reactions to beta blockers - the recognized treatment. Claimant testified that the condition has changed and is now considered mild. (Tr. 70). Indeed, the medical record indicates that Claimant's heart shows no clicks, with normal heart sounds, no murmurs, normal PMI, and regular sinus rhythm. (Tr. 269, 273, 276, 280, 282, 285). Testing and monitoring revealed two episodes of sinus tachycardia with no dizzy spells in January of

2016.  (Tr. 487).  Supraventricular tachycardia was found in April of 2014 but no treatment was given as it was considered an isolated one time episode.  (Tr. 502).  No tachycardia was found in February of 2015.  (Tr. 513).  Relying upon these normal and mild findings, the ALJ did not impose limitations on Claimant of this condition.  (Tr. 45-46).   The medical record does not support further restrictions in the RFC.  She did not report dizziness or any other result which would require the imposition of additional limitations beyond those already set forth in the RFC.

Claimant also asserts the ALJ did not consider the combined effect of all of the severe and non-severe impairments.  The ALJ specifically stated that she did so.  (Tr. 44).  The general practice is to take the ALJ at her word that she considered the record and combined effects when she stated she did.  Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009) quoting Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007).

Claimant states that since limitations from these additional conditions were not included in the RFC, the hypothetical questions posed to the vocational expert did not accurately reflect her restrictions.  Since the RFC was not erroneous and the questioning set forth the limitations in the RFC, no error is attributed at step five.

**Consideration of the Treating Physician's Opinion**

Claimant's treating physician, Dr. Easwar Sundaram, Jr., completed a form entitled "Physical Work Restrictions/Recommendations" which is a form of medical source statement. Dr. Sundaram diagnosed Claimant with obstructive sleep apnea, generalized anxiety disorder, variants of migraine, unspecified disorder of autonomic nervous system. Under prognosis, Dr. Sundaram stated "patient is totally disabled." He noted dizziness, weakness, balance difficulty, headaches, loss of sensation, numbness, anxiety, insomnia." (Tr. 464). The proposed treatment for Claimant's conditions was "continue current medications, continue auto-pap for sleep apnea, follow up with all health care providers." Dr. Sundaram found Claimant suffered from anxiety. (Tr. 465). He opined Claimant was "incapable of even 'low stress' jobs." He estimated Claimant could walk a city block without rest or severe pain. Claimant could stand/walk for about four hours in an eight hour workday. She would require unscheduled breaks every hour for 20 minutes. (Tr. 466-67).

Dr. Sundaram stated Claimant could lift/carry less than ten pounds frequently and ten pounds occasionally. She could occasionally twist, stoop, and climb stairs but never crouch/squat or climb ladders. (Tr. 468). Claimant would have "good days" and

"bad days". Her conditions would require her to be absent from work more than four days per month. (Tr. 469).

The ALJ gave the finding by Dr. Sundaram of total disability "little weight" because (1) the statement by a physician is not determinative of a claimant's disability status because vocational factors must be considered; (2) a statement of disability is not a medical opinion but a legal conclusion reserved to Defendant; and (3) "Dr. Sundaram's statement is inconsistent with the fairly benign and mostly mild findings in the medical evidence of record, discussed extensively above." (Tr. 48).

Clearly, the finding of total disability is reserved to Defendant and not a medical opinion. *See* Castellano v. Sec'y of Health & Human Serv., 26 F.3d 1027, 1029 (10th Cir. 1994). Moreover, this Court has set forth the findings in the medical record as did the ALJ which directly contradict the severe findings of limitation in Dr. Sundaram's medical source statement. This inconsistency justifies the discounting of the treating physician's opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

Claimant also contends the ALJ erred in finding the opinion of Dr. Jimmie Cole to be entitled to "substantial weight". Dr. Cole testified at the hearing. He concluded that Claimant's generalized anxiety disorder was non-severe. (Tr. 82). Dr. Cole stated that the limitations upon Claimant's activities of daily living, social

functioning, and concentration and pace precipitated by her anxiety were mild. Claimant's attorney did not question Dr. Cole at the hearing. (Tr. 83). The opinion was consistent with those of the reviewing consultants, Dr. James Sturgis and Dr. Laura Eckert. (Tr. 97-98, 106-07). Claimant was treated with Xanax and the condition was described in the medical record as "well controlled." (Tr. 277). The ALJ's incorporation of Dr. Cole's opinion in her analysis was supported by the available medical record.

### Consideration of Obesity

Claimant contends the ALJ failed to consider the combined effect of her obesity in her decision. The ALJ stated Claimant was 5'6" and weighed 291 pounds. (Tr. 47). She appears to have made an error caused largely by an apparent scrivner's error in the transcript. Claimant actually weighed 198 pounds. In either event, Claimant would have been classified as obese and, therefore, the clerical error was harmless.

The ALJ stated in the decision that she considered the effect of Claimant's obesity upon her ability to work under Soc. Sec. R. 02-01. She concluded

> In the present case, the record does not contain evidence indicating that the claimant's obesity alone has caused her to be unable to work, nor does it show that in conjunction with her other impairments that it has disabled her. The claimant herself did not state that she has had difficulties working because of her obesity.

12

>    Furthermore, the record does not show that her other impairments are secondary to her obesity. Thus, the claimant's obesity does not, by itself, nor in conjunction with her other impairments, cause greater limitations than I have accounted for in the residual functional capacity activities.

(Tr. 47).

An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id. However,

speculation upon the effect of obesity is discouraged.[2] *See*, <u>Fagan v. Astrue</u>, 2007 WL 1895596, 2 (10th Cir.).

The ALJ specifically discussed the effects of Claimant's obesity upon her other impairments. The medical record does not indicate and Claimant has not directed this Court to the presence of any functional limitations which would stem from Claimant's obesity. She did not testify as to any limitations which she experiences as a result of her obesity. The diagnosis of the condition does not automatically translate into functional limitations. Therefore, "the factual record does not support [Claimant's] position that her obesity, either alone or in combination with other conditions, precludes her from performing [her past relevant] work." <u>Rose v. Colvin</u>, 634 F. App'x 632, 637 (10th Cir. 2015) quoting <u>Howard v. Barnhart</u>, 379 F.3d 945, 947 (10th Cir. 2004). The ALJ did not err in her consideration of Claimant's obesity.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons,

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE